**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

JEYSEN ZIVAN YOGARATNAM,
     Plaintiff,

v.

DEFENDANT "1" a/k/a "DARINA DUBOIS"
and JOHN DOES 1-20, as yet unidentified
Individuals, Business Entities and/or
Unincorporated Associations,
     Defendants.

CASE NO. 2:24-cv-00393

### EMERGENCY EX PARTE MOTION FOR TEMPORARY RESTRAINING ORDER WITHOUT NOTICE AGAINST DEFENDANT "1" a/k/a "DARINA DUBOIS" AND JOHN DOES 1-20

Pursuant to Federal Rule of Civil Procedure 65(b) and Louisiana Civil Code article 3601, Plaintiff JEYSEN ZIVAN YOGARATNAM, respectfully seeks the entry of a Temporary Restraining Order (TRO) against Defendant "1" a/k/a "DARINA DUBOIS" and JOHN DOES 1-20. The requested TRO aims to freeze Plaintiff's assets currently located at the Destination Addresses (as defined below), held by Defendant "1" a/k/a "DARINA DUBOIS" or her cohorts Defendants JOHN DOES 1-20, without prior notice to Defendants.

In support, Plaintiff alleges as follows:

### FACTUAL BACKGROUND

Plaintiff Jeysen Zivan Yogaratnam met Defendant "1" a/k/a "DARINA DUBOIS" who represented that she was a cryptocurrency investor who could help Plaintiff JEYSEN ZIVAN YOGARATNAM earn money investing in cryptocurrency using her trading methods.[1]  Relying on her misrepresentations, Plaintiff Jeysen Zivan Yogaratnam, under the guidance of Defendant

---

[1] ECF No. 1 [Complaint for Conversion of Stolen Cryptocurrency, hereinafter "Complaint"] at ¶ 18.

"1", downloaded what he believed was a smartphone application owned and operated by a purportedly legitimate exchange called CTRL-FX.[2] Instead, Defendant "1" helped Plaintiff Jeysen Zivan Yogaratnam download an application that Defendants knew to be a sophisticated and elaborate scam wherein they induced unsuspecting individuals, including and specifically Jeysen Zivan Yogaratnam, to transfer cryptocurrency to a fraudulent, illegitimate trading exchange.[3]

At the direction of Defendant "1," Plaintiff Jeysen Zivan Yogaratnam began transferring cryptocurrency he held on his Coinbase and Kraken accounts to what he believed was the legitimate CTRL-FX exchange. The app was entirely simulated and served as a vehicle of theft for Defendants, giving them a mechanism to provide Plaintiff with false account statements that masked the fraudulent scheme Defendants were perpetrating.

In essence, the "CTRL-FX" to which Plaintiff was sending his cryptocurrency holdings was actually – unbeknownst to Plaintiffs – Defendants' own private cryptocurrency wallet addresses.[4]

Through blockchain analytics tracing[5] the path of Plaintiff's cryptocurrency assets, it has become apparent that Defendants have stolen all of Plaintiff's crypto assets, and those assets have been transferred to cryptocurrency accounts under Defendants' sole control.[6]

For example, Plaintiff's stolen assets have been traced to the following cryptocurrency

---

[2] **Exhibit "A"** [Yogaratnam Decl.] at ¶ 4 (Citing Complaint at ¶¶ 20-22).

[3] *Id.*

[4] *Id.* (citing Complaint at ¶¶ 23-30).

[5] There are slight differences in the total amounts of the traced stolen cryptocurrency reported in the Complaint when compared to this most recent tracing reported herein. In the calculation process, it is common practice to round numbers for averaging purposes. Additionally, certain small transactions may go untraced due to their impractical flow. The difference observed on the USDT side is a result of rounding up, whereas the difference on the BTC side is attributed to the impractical flow of specific low-value transactions.

[6] Complaint at ¶¶ 35-62; *see also* Declaration of Georgiy Stanev (Dated February 20, 2024) [Stanev Decl.], a copy of which is attached hereto as **Exhibit "B".**

wallet addresses held primarily at cryptocurrency exchanges Bitkub, Binance, Blofin, and Tokenlon. The wallet addresses where Plaintiff's stolen assets currently sit are believed to be owned or controlled by Defendants and were used to launder the digital assets stolen from Plaintiff.[7] The wallet addresses and values are set forth in the tables below:

| No. | Bitkub Destination Address | Funds Traced (USDT) |
| --- | --- | --- |
| 1 | 0x7b7b86bfe06929a7a32aaf9c7bb87c27a816cc7b | (See total below) |
| 2 | 0x3d1d8a1d418220fd53c18744d44c182c46f47468 | (See total below) |
| | | Total: 153,900 USDT |

| No. | Blofin Destination Address | Funds Traced (USDT) |
| --- | --- | --- |
| 1 | 0xc383e037ab6872adae3ec35714b8d8cc46bea867 | (See total below) |
| 2 | 0x0e747eb2ff0f26fb77c3a1ea67ee07fac2dbb783 | (See total below) |
| | | Total: 1,063,609 |

| No. | Binance Destination Address | Funds Traced (BTC) |
| --- | --- | --- |
| 1 | 0x376795c8b53b69a712f1024cf8537f980eb3bcbf | 77,763.16356 USDT |
| | | Total: 77,763.16356 USDT |

| No. | Tokenlon Destination Address | Funds Traced (BTC) |
| --- | --- | --- |
| 1 | 3JA4StsiJwsgMvnxj8JgchmBEZMTH9mUWm | 3.28654 BTC |
| 2 | 3JMjHDTJjKPnrvS7DycPAgYcA6HrHRk8UG | 3.63019 BTC |
| | | Total: 6.91673 BTC |

As set forth in Plaintiff's Complaint, Defendants stole a significant amount of cryptocurrency totaling, at the time of the theft, approximately two hundred ninety-four thousand two hundred and fifteen dollars ($294,215.00).[8] Plaintiff tracked the cryptocurrency primarily to Bitkub, Binance, Blofin, and Tokenlon. Given these facts, Plaintiff commenced this action and is entitled to a Temporary Restraining Order freezing Defendant "1" and/or the JOHN DOES 1-20 Defendants' assets – including the Destination Addresses maintained by Defendants – to preserve the *status quo ante* pending the outcome of this litigation.

---

[7] **Exhibit "B"** [Stanev Decl.] at ¶¶ 9-10 (citing Complaint at ¶¶ 35-62).
[8] See Complaint ¶ 1.

<h1 style="text-align: center">LEGAL ARGUMENT AND AUTHORITIES</h1>

**I.      Rule 65 Permits Entry of a Temporary Restraining Order Without Notice**

1.      Rule 65 permits this Court to enter a Temporary Restraining Order without notice to the adverse parties if "specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury . . . will result to the movant before the adverse party can be heard in opposition." Further, the movant's counsel must certify in writing "any efforts made to give notice and the reasons why it should not be required.[9]

2.      As to the first prong of Rule 65(b)(1), the declaration of Plaintiff Jeysen Zivan Yogaratnam, summarized and cited above and below, shows the likelihood of immediate and irreparable injury or loss. Plaintiff was clearly victimized and robbed by Defendant "1" and her assailants Defendants JOHN DOES 1-20; and the stone wall of obfuscation erected by the anonymous nature of cryptocurrency transactions significantly inhibits Plaintiff's ability continue to trace his stolen funds or even identify Defendants by their proper legal names at this point.

3.      By freezing Defendants' assets, Plaintiff will have a foothold in his arduous climb to recovering his stolen cryptocurrency before Defendants can further transfer it beyond Plaintiff's reach.

4.      With regard to the second prong of Rule 65(b)(1), a TRO is warranted without notice to Defendants. Defendants' proper legal names, addresses and locations are unknown. The only identifiable information Plaintiff has about the Defendants are the Destination Addresses. In a separate motion currently being prepared, Plaintiff will seek leave to serve the Complaint and Summons by alternative means -- by a non-fungible token ("NFT") – upon Defendants through the

---

[9] Fed.R.Civ.P. 65(b)(1)(B). *See also*, *Sun Commodities, Inc. v. Miami Produce Int'l Imp. & Exp., Corp.*, 2008 U.S. Dist. LEXIS 85192 (S.D. Fla. Oct. 7, 2008).

Destination Addresses where Plaintiff's stolen cryptocurrency is being held. At that point, Defendants will be apprised of the charges brought against them in this lawsuit so they may defend themselves against those charges, if they so choose.

5. Furthermore, Plaintiff certifies a deep concern that with each passing hour, Defendants will dissipate any traceable funds, either into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

## II. The Court Can Issue an Injunction to Freeze Assets in this Action for Equitable Relief

6. Under the general rule, federal courts lack the authority to freeze assets of a defendant before the claims have been brought to judgment. *See Grupo Mexicano de Desarrollo S.A. v. Alliance Bond Fund, Inc.*, 527 U.S. 308, 322 (1999). "However, when the plaintiff is seeking equitable relief, as opposed to merely legal damages, the federal courts have the authority to issue a preliminary injunction in order to freeze the assets of a defendant if the requirements for a preliminary injunction are otherwise satisfied." *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008) (citing *Grupo*, 527 U.S. at 324-325); *see also In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004) (citations omitted). In *Focus Media*, the Ninth Circuit specifically noted that the rule against injunctive relief as articulated in *Grupo Mexicano* did not apply to the underlying claims for fraudulent conveyance and constructive trust, ultimately concluding that the trial court's entry of a preliminary injunction had been proper. *Id*. at 1085.

7. Here, Plaintiff seeks equitable relief in addition to his legal remedies and is entitled to an injunction to maintain the *status quo* until the claims in the Complaint can be resolved. Amongst other claims and remedies sought, Plaintiff alleges common law torts (conversion and unjust enrichment) and requests relief in the following form of equity:

> "…equitable imposition of a constructive trust over the property taken from Plaintiff that is currently under the control of Defendant "1" and/or JOHN DOES 1-20, in the identified cryptocurrency wallet addresses held at Bitkub, Binance, Blofin, and Tokenlon and further demands that the wrongfully obtained property be returned to Plaintiff." [10]

8. In disputes strikingly similar to the instant action, other courts have awarded the equitable relief sought by Plaintiffs here. *See Patel v. Doe, et al.,* Case No. 3:23-24651, (N.D. Fla. January 11, 2024) (granting emergency TRO without notice to Doe defendants in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchanges OKX and Binance); *Blum v. Doe, et al.,* Case No. 3:23-24734, (N.D. Fla. December 13, 2023) (granting emergency TRO without notice to Doe defendants in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchanges MEXC, OKX, and HTX); *Ohlin et al v. Defendant 1 a/k/a "SELINA" et al,* Case no. 3:23-cv-08856, (N.D. Fla. May 26, 2023) (granting emergency TRO without notice to Doe defendants in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchanges Binance, Gemini, and OKX); *Astrove v. John Doe*, Case No. 9:22-cv-80614, 2022 WL 2805315 (S.D. Fla. Apr. 21, 2022) (granting emergency motion for TRO without notice to John Doe defendant in case nearly identical to present matter involving stolen cryptocurrency which were traced to the cryptocurrency exchange Binance); *Martinangeli v. Akerman, LLP*, Case No. 1:18- cv-23607-UU, 2018 WL 6308705 (S.D. Fla. Sept. 14, 2018) (entering TRO without notice to defendant whose assets were thereby frozen); *Heissenberg v. Doe*, Case No. 21-CV- 80716-ALTMAN/Brannon (S.D. Fla. April 23, 2021) at DE 14 (*same*); *Williams v. Doe*, Case No. 6:21- cv-03074-RK (W.D. Mo. Apr. 1, 2021) at DE 18 (*same*), copies of which are attached hereto as **Composite Exhibit "C"**.

---

[10] *See* Complaint at ¶ 60.

9.     Accordingly, Plaintiffs are entitled to a Temporary Restraining Order if the other requirements for a Temporary Restraining Order have been met. For the reasons described below, Plaintiffs are entitled to such relief.

10.    Plaintiff also requests that the Court waive or otherwise limit to a de minimis amount any security associated with the issuance of this Temporary Restraining Order.

### III.    A Temporary Restraining Order is Appropriate to Prevent Immediate and Irreparable Harm

11.    The purpose of a preliminary injunction is to preserve the *status quo* and thus prevent irreparable harm until the respective rights of the parties can be ascertained during a trial on the merits. *City of Dallas v. Delta Air Lines, Inc., 847 F.3d 279, 285 (5th Cir. 2017).*

12.    The movant must show: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable harm if the injunction does not issue; (3) that the threatened injury outweighs any harm that will result if the injunction is granted; and (4) that the grant of an injunction is in the public interest. *Moore v. Brown*, 868 F.3d 398, 402-03 (5th Cir. 2017).

As shown below, Plaintiffs have satisfied each element of that standard.

### A.    Plaintiff has a Substantial Likelihood of Success on the Merits of His Claims

13.    The harms alleged in Plaintiff's Verified Complaint, as well as the facts set forth in Plaintiff Jeysen Zivan Yogaratnam's declaration, make clear that Plaintiff was victimized by Defendants who -- through actual fraud, misappropriation, conversion, theft, or other questionable means -- obtained Plaintiff's cryptocurrency, which in equity and good conscience Defendants should not be permitted to hold.

14.    Based on that fraudulent behavior, Plaintiff has asserted claims for: (1) conversion, and (2) unjust enrichment.

15. There is a substantial likelihood that Plaintiff will succeed on the merits of his case because this is a straightforward case of fraud and conversion. Furthermore, each and every transaction has been traced on the blockchain, providing Plaintiff and the Court with a definitive trail of Plaintiff's stolen assets.

16. Moreover, any and all cryptocurrency assets held in the Destination Addresses to which Defendants transferred any portion of the funds stolen from Plaintiff must be frozen and held in a constructive trust for Plaintiff's benefit, as Defendants are not entitled to the benefit of wrongfully misappropriated, converted, and stolen cryptocurrency assets that were taken from Plaintiff.[11]

17. Considering the foregoing, there is a high likelihood that Plaintiff will succeed on his claims.

**B.      <u>Plaintiff Will Suffer Irreparable Harm if Defendants are Not Enjoined</u>**

18. There is a significant risk that Defendants may dissipate the money stolen from Plaintiffs or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations.

19. Considering the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions, it is imperative to freeze Defendants' assets, including the aforementioned Destination Addresses, to maintain the status quo to avoid dissipation of the

---

[11] Although Louisiana does not generally recognize the concept of constructive trusts, Louisiana courts regularly grant writs of sequestration and place assets in the registry of the court during the adjudication process. La. C.C.P. art. 3571. Nevertheless, should it be necessary to undertake a choice of law analysis, the Court will find that Maryland state law applies because Plaintiff resides in Maryland, the acts giving rise to the theft occurred in Maryland, and Maryland's policies are the most impaired if its law is not applied. La. Civ. Code art. 3542; *Academy of Allergy and Asthma in Primary Care v. Louisiana Health Service and Indemnity Company*, 599 F.Supp 3d 413 (E.D. La. 2022). Maryland expressly recognizes the imposition of constructive trusts. *Wimmer v. Wimmer*, 414 A.2d 1254, 1258 (Md. Ct. App. 1980); *Bowie v. Ford*, 304 A.2d 803 (Md. Ct. App. 1973).

money illegally taken from Plaintiff.

**C.** **There is Little Prejudice to Defendants if the Temporary Restraining Order is Entered**

20.     While Plaintiff would be severely prejudiced if Defendants dissipate the funds wrongfully taken from Plaintiff, Defendants face no such prejudice. An order forbidding Defendants from moving their assets will, at worst, delay Defendants from shifting their stolen funds to an untraceable cryptocurrency account; and at best, will help maintain the *status quo* for Plaintiff to recover the valuable assets illegally obtained from Plaintiffs.

**D. Entering a Temporary Restraining Order is in the Public Interest**

21.     The public interest strongly supports entry of a Temporary Restraining Order here.

22.     Moreover, entering a Temporary Restraining Order serves the public interest by promoting the objectives of the Financial Crimes Enforcement Network [FinCEN] (a division of the U.S. Department of the Treasury) by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen investor assets in this action.

**IV.** **Plaintiff has No Adequate Remedy at Law**

23.     Plaintiff's only remedy to recover the funds fraudulently taken from him is through his right to equitable relief in the form of enjoining asset dissipation by Defendants, beginning with an Order prohibiting Defendants from transferring or alienating the funds in the aforementioned digital wallets. Thereafter, there must be the imposition of a constructive trust to prevent the further dissipation of Plaintiff's assets. A legal remedy for monetary relief alone will not adequately protect Plaintiff's equitable ownership interest in those funds and assets that can disappear with the click of a computer mouse.

**CONCLUSION**

**WHEREFORE** Plaintiff, Jeysen Zivan Yogaratnam**,** respectfully requests that this Court find Plaintiff has satisfied the elements for his claims for preliminary injunctive relief and enter a Temporary Restraining Order without notice to Defendants, freezing the assets located in the aforementioned digital wallets that exist on the Bitkub, Binance, Blofin, and Tokenlon exchanges whereto Defendants transferred any portion of the funds stolen from Plaintiff and further restrain and enjoin the use, transfer, alienation, or dissipation of the cryptocurrency assets located therein. Such an order is necessary to preserve the *status quo ante* and protect Plaintiff pending the full adjudication of Plaintiff's claims.

Furthermore, Plaintiff respectfully requests that this Court waive or otherwise limit to a *de minimis* amount any security for issuance of this preliminary injunction.

Dated this 22ⁿᵈ day of February 2024.　　　Respectfully submitted,

By:  */s/Reagan Charleston Thomas*

**REAGAN CHARLESTON THOMAS**
**LA BAR NO. 38522**
AYLSTOCK, WITKIN,
KREIS & OVERHOLTZ, PLLC
17 E. Main Street, Suite 200
Pensacola, Florida 32502
rthomas@awkolaw.com
(850) 202-1010