UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JEYSEN ZIVAN YOGARATNAM** | **CIVIL ACTION** |
| **VERSUS** | **NO. 24-393** |
| **DUBOIS et al.** | **SECTION: "G"(4)** |

## ORDER AND REASONS

Before the Court is Plaintiff Jeysen Zivan Yogaratnam's ("Plaintiff") "Emergency Ex Parte Motion for Temporary Restraining Order Without Notice Against Defendant '1' a/k/a 'Darina Dubois' and John Does 1-20."[1] In the motion, Plaintiff seeks a freeze of his cryptocurrency assets currently located at the Destination Addresses held by Defendant "1" a/ka/ "Darina Dubois" or her cohorts Defendants John Does 1-20, without prior notice to Defendants.[2] Having considered the motion, the memoranda in support and in opposition, the record, and the applicable, the Court grants the motion. This Order serves as the Court's findings of fact and conclusions of law.

## I. Background

According to the Complaint, Defendants deceived Plaintiff into transferring approximately $294,215 worth of cryptocurrency into Defendants' private cryptocurrency wallet addresses (collectively, "Destination Addresses") after Defendant 1 a/k/a "Darina Dubois" fraudulently represented that she was a cryptocurrency investor who would assist Plaintiff in investing his cryptocurrency.[3] Plaintiff allegedly believed that he had downloaded a legitimate and regulated

---

[1] Rec. Doc. 6.

[2] *Id.* at 1.

[3] Rec. Doc. 1 at 1, 3–4.

1

cryptocurrency exchange smartphone application called CTRL-FX, but under the guidance of Defendant 1, Plaintiff instead downloaded an illegitimate application.[4] At the direction of Defendant 1, Plaintiff began transferring cryptocurrency he held on his Coinbase and Kraken accounts to what he believed was the legitimate CTRL-FX exchange.[5] Plaintiff alleges that the app was entirely simulated and served as a vehicle of theft for Defendants, giving them a mechanism to provide Plaintiff with false account statements that masked the fraudulent scheme Defendants were perpetrating.[6] Plaintiff alleges that the "CTRL-FX" exchange to which Plaintiff was sending his cryptocurrency holdings was actually—unbeknownst to Plaintiff—Defendants' own private cryptocurrency wallet addresses.[7]

According to the Complaint, Plaintiff retained CNC Intelligence Inc., a forensic cryptocurrency tracing expert company, which has traced Plaintiff's stolen assets to Destination Addresses believed to be under Defendants' control.[8] Specifically, Plaintiff has identified the following cryptocurrency wallet addresses held primarily at cryptocurrency exchanges Bitkub, Binance, Blofin, and Tokenlon:[9]

---

[4] *Id.* at 4.

[5] *Id.* at 5–6.

[6] *Id.* at 6–7.

[7] *Id.* at 4.

[8] *Id.* at 8.

[9] Rec. Doc. 1-4.

| No. | Bitkub Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0x7b7b86bfe06929a7a32aaf9c7bb87c27a816cc7b | (See total below) |
| 2 | 0x3d1d8a1d418220fd53c18744d44c182c46f47468 | (See total below) |
|  |  | Total: 153,900 USDT |

| No. | Blofin Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0xc383e037ab6872adae3ec35714b8d8cc46bea867 | (See total below) |
| 2 | 0x0e747eb2ff0f26fb77c3a1ea67ee07fac2dbb783 | (See total below) |
|  |  | Total: 1,063,609 |

| No. | Binance Destination Address | Funds Traced (BTC) |
|---|---|---|
| 1 | 0x376795c8b53b69a712f1024cf8537f980eb3bcbf | 77,763.16356 USDT |
|  |  | Total: 77,763.16356 USDT |

| No. | TokenIon Destination Address | Funds Traced (BTC) |
|---|---|---|
| 1 | 3JA4StsiJwsgMvnxj8JgchmBEZMTH9mUWm | 3.28654 BTC |
| 2 | 3JMjHDTJjKPnrvS7DycPAgYcA6HrHRk8UG | 3.63019 BTC |
|  |  | Total: 6.91673 BTC |

On February 15, 2024, Plaintiff filed his Complaint, asserting (1) conversion, (2) unjust enrichment, (3) imposition of constructive trust and disgorgement of funds, and (4) conspiracy claims against Defendants.[10] The Court has diversity jurisdiction over this case because the amount in controversy exceeds $75,000 and the suit is between Plaintiff, a citizen of Nevada, and Defendants, citizens of a foreign state.[11] Venue is proper in this District because Defendants are not residents in the United States, and therefore may be sued in any judicial district.[12]

On February 22, 2024, Plaintiff filed the instant Motion for Temporary Restraining Order seeking to freeze Plaintiff's assets at the specified Destination Addresses held by Defendants.[13]

---

[10] Rec. Doc. 1 at 8–11.

[11] *See* 28 U.S.C. § 1332(a)(2).

[12] *See* 18 U.S.C. § 1965(a), (b), and 28 U.S.C. § 1391(b), (c). Under 28 U.S.C. § 1391(c)(3), a defendant who does not reside in the United States—regardless of citizenship—may be sued in any district.

[13] Rec. Doc. 6.

## II. Plaintiff's Arguments

*A.     Plaintiff's Arguments in Support of the Motion*

First, Plaintiff contends that he has a substantial likelihood of success on the merits of his claims, as he asserts that it is clear he was victimized by Defendants and defrauded of cryptocurrency that belonged to him.[14] Plaintiff notes that "each and every transaction has been traced on the blockchain," so there is a "definitive trail of Plaintiff's stolen assets."[15] Second, Plaintiff avers that he will suffer irreparable harm if Defendants are not enjoined because there is a "significant risk that Defendants may dissipate the money stolen from Plaintiff or simply transfer those funds into untraceable cryptocurrency accounts or to offshore entities organized in unknown locations."[16] Third, Plaintiff argues that there is little prejudice to Defendants if the Court issues the Temporary Restraining Order because at worst, Defendants will only suffer from a delay in shifting their stolen funds to an untraceable cryptocurrency account.[17] Fourth, Plaintiff contends that the Court issuing a temporary restraining order serves the public interest because it promotes the objectives of the U.S. Department of the Treasury's Financial Crimes Enforcement Network "by providing assurance that courts will protect investors' assets from theft and will aid investors in their recovery of stolen assets when they can be readily located and traced to specific locations, like the stolen investor assets in this action."[18] Fifth, Plaintiff contends that his only remedy to

---

[14] Rec. Doc. 6 at 7.

[15] *Id.* at 8.

[16] *Id.*

[17] *Id.* at 9.

[18] *Id.*

recover the funds fraudulently taken from him is through his right to equitable relief.[19] Plaintiff notes that a legal remedy for monetary relief alone will not protect him from losing his equitable ownership interest in the stolen funds located in Destination Addresses.[20] Accordingly, Plaintiff moves the Court to issue an Order prohibiting Defendants from transferring or alienating the funds in the aforementioned digital wallets.[21]

### III. Legal Standard

Federal Rule of Civil Procedure Rule 65 governs injunctions and restraining orders, and Rule 65(b) sets forth the procedural rules governing the issuance of temporary restraining orders. Under Rule 65(b), a court may issue a temporary restraining order without notice only if:

(A) [S]pecific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

(B) [T]he movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.[22]

When a TRO is "issued without notice to the adverse party," the order must state "the date and hour it was issued; describe the injury and state why it is irreparable; state why the Order was issued without notice; and be promptly filed in the clerk's office and entered in the record."[23] "The order expires at the time after entry—not to exceed 14 days—that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension. The reasons for an extension must be entered in the record."[24]

---

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] Fed. R. Civ. P. 65(b)(1)(A),(B).

[23] Fed. R. Civ. P. 65(b)(2).

[24] *Id.*

5

The plaintiff must additionally establish the following essential elements: (1) a substantial likelihood of success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction will cause to the adverse party; and (4) the injunction will not do disservice to the public interest.[25] Because such relief is an extraordinary remedy, to justify entry of a temporary restraining order or preliminary injunction,[26] the petitioner must "clearly carr[y] the burden of persuasion on all four elements."[27] If a plaintiff fails to carry its burden as to any one of these factors, injunctive relief cannot be granted.[28] Regardless of whether the temporary restraining order is granted, Federal Rule of Civil Procedure 52(a) requires the Court to "state the findings of fact and conclusions of law that support its action."[29]

## IV. Analysis

For the reasons discussed in more detail below, Plaintiff has demonstrated that he is entitled to a TRO preventing removal or transfer of Plaintiff's assets contained in the Destination Addresses to preserve the status quo pending the outcome of this litigation.[30] As a general rule courts may not freeze a defendant's assets prior to trial in a case where only money damages are

---

[25] *Janvey v. Alguire*, 647 F.3d 585, 595 (5th Cir. 2011).

[26] The legal standard for issuance of a temporary restraining order and for a preliminary injunction are the same. *See Gregory v. Miller*, No. 04-3017, 2007 WL 891878, at *2 (E.D. La. Mar. 21, 2007) (Engelhardt, J.).

[27] *PCI Transp., Inc. v. Fort Worth & W. R.R. Co.*, 418 F.3d 535, 545 (5th Cir. 2005) (internal quotation marks and citations omitted).

[28] *See Enterprise Int'l Inc. v. Corp. Estatal Petrolera Ecautoriana*, 762 F.2d 464, 472 (5th Cir. 1985).

[29] Fed. R. Civ. P. 52(a)(1), (2).

[30] *See, e.g., Hikmatullaev v. Villa*, No. 23-22338, 2023 WL 4373225, at *3 (S.D. Fla. June 28, 2023) (finding that "[p]laintiffs request to have [crypocurrency] accounts frozen to prevent dissipation of the assets . . . is logical, appropriate, and is a common remedy employed in similar cases").

sought.[31] However, in this case, Plaintiff seeks the equitable remedy of a constructive trust over the property.[32] According to the Complaint, Plaintiff resides in Nevada, the acts giving rise to the theft occurred in Nevada, and Nevada's policies are the most impaired if its law is not applied.[33] Therefore, the Court applies Nevada law to this case. Nevada law expressly recognizes the imposition of constructive trusts.[34] Numerous courts have recognized that it is appropriate to issue a temporary restraining order and freeze assets to preserve the funds for the equitable remedy.[35] Further, numerous district courts, including at least one other district judge in the Eastern District of Louisiana, have issued a TRO in this exact circumstance to freeze a cryptocurrency asset.[36]

Plaintiff has shown a strong likelihood of success on the merits of his conversion claim. Under Nevada law, conversion is "a distinct act of dominion wrongfully exerted over another's personal property in denial of, or inconsistent with his title or rights therein or in derogation,

---

[31] *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308 (1999).

[32] Rec. Doc. 1 at 9–10.

[33] *See* La. Civ. Code art. 3542.

[34] *See Holland v. Anthony L. Barney, Ltd.*, 139 Nev. Adv. Op. 49, 540 P.3d 1074, 1083 (Nev. App. 2023) ("Equitable remedies, such as equitable liens and constructive trusts, are available to a plaintiff when legal remedies, such as statutory review, are not available or are inadequate. The Nevada Supreme Court previously approved the use of the Restatement (First) of Restitution (1937), [] and recognized both equitable liens and constructive trusts as remedies to restore property belonging to another.") (internal citations and quotation marks omitted).

Assuming that Louisiana law applies to this case, the Louisiana Civil Code prohibits the imposition of a constructive trust or equitable lien on any property. *Mansfield Hardwood Lumber Co. v. Johnson*, 268 F.2d 317, 319 (5th Cir. 1959). However, Louisiana courts regularly grant writs of sequestration and place assets in the registry of the court during the adjudication process. *See* La. Code of Civ. Pro. art. 3571. A writ of sequestration is equitable in nature because the plaintiff is seeking that the court compels the defendant to perform a certain act or refrain from a certain act.

[35] *In re Focus Media, Inc.*, 387 F.3d 1077, 1084 (9th Cir. 2004); *Absolute Activist Value Master Fund Ltd. v. Devine*, 2016 WL 1572388, at *3 (M.D. Fla. Apr. 19, 2016); *Clayton v. Heartland Resources, Inc.*, 2008 WL 5046806, at *4 (W.D. Ky. Nov. 21, 2008).

[36] *See Lin v. Defendant 1 a/k/a "Fanxin Lin,"* Case No. 23-5878 (E.D. La. (Dec. 13, 2023) (Guidry, J.); *Patel v. Doe*, Case No. 23-24651, (N.D. Fla. Jan, 11, 2024) (Rodgers, J.); *Blum v. Doe*, Case No. 23-24734, (N.D. Fla. Dec. 13, 2023) (Rodgers, J.); *Ohlin v. Defendant 1 a/k/a "SELINA,"*, Case No. 23-8856, (N.D. Fla. May 26, 2023) (Wetherell, J.); *Astrove v. John Doe*, Case No. 22-80614, 2022 WL 2805315 (S.D. Fla. Apr. 21, 2022) (Ruiz, J.).

exclusion, or defiance of such title or rights."[37] Plaintiff has produced evidence suggesting that he owned the funds traced to Defendants' Destination Addresses. It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership.[38] Plaintiff's cryptocurrency assets are specific, identifiable property that CNC Intelligence, Inc. has traced to Defendants' Destination Addresses.

Plaintiff has shown that irreparable harm will ensue absent a TRO, considering the speed with which cryptocurrency transactions are made, as well as the anonymous nature of those transactions.[39] Plaintiff's potential recovery of assets will disappear if Defendants transfer the allegedly stolen assets into inaccessible digital wallets, which could occur at any moment, and the likelihood of that occurrence would be significantly raised should the Court require Defendants to be notified of Plaintiff's Motion prior to the issuance of a TRO.

The balance of hardships also favors Plaintiff because a TRO preserves the status quo and prevents irreparable harm until such time as the Court may hold a hearing. Entry of a TRO also does not harm the public interest, which is properly served by promoting the objectives of the U.S. Department of the Treasury and providing assurance that courts will protect and aid investors in

---

[37] *Evans v. Dean Witter Reynolds, Inc.*, 116 Nev. 598, 606, 5 P.3d 1043, 1048 (2000) (quoting *Wantz v. Redfield*, 74 Nev. 196, 198, 326 P.2d 413, 414 (1958)).

[38] Under Louisiana law, a conversion occurs "when one wrongfully does any act of dominion over the property of another in denial of or inconsistent with the owner's rights," such as when one wrongfully exercises or assumes authority over another's goods, depriving him of possession, permanently or for an indefinite time. *F.G. Bruschweiler Antiques, Ltd. v. GBA Great British Antiques, LLC*, 03-792 (La. App. 5 Cir. 11/25/03); 860 So. 2d 644, 649–50. Even assuming that Louisiana law applies to this case, Plaintiff has established a substantial likelihood of success on the merits of his conversion claim.

[39] *See, e.g., Hikmatullaev*, 2023 WL 4373225, at *3 (noting that "[c]ourts have found that such a showing satisfies the irreparable harm prong because of 'the speed with which cryptocurrency transactions are made as well as the anonymous nature of those transactions'" (quoting *Astrove*, 2022 WL 2805315, at *3)).

their recovery of stolen assets.[40]

Finally, the Court enters the TRO without notice to Defendants because Plaintiff provided specific facts in the Complaint showing that immediate and irreparable loss will result absent the TRO and Plaintiff does not currently know Defendants' true identities.[41] Additionally, because of the apparent strength of the case, the Court will require Plaintiff to post a modest amount of security, in the amount of $100, pursuant to Federal Rule of Civil Procedure 65(c).[42]

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff Jeysen Zivan Yogaratnam's Emergency Ex Parte Motion for Temporary Restraining Order Without Notice Against Defendant '1' a/k/a 'Darina Dubois' and John Does 1-20"[43] is **GRANTED.** A TRO is entered as follows:

1. Defendants and their agents, servants, employees, attorneys, partners, successors, assigns, and all other persons or entities through which she/they act or who act in active concert or participation with any of them, who receive actual notice of this Order by personal service or otherwise, whether acting directly or through any trust, corporation, subsidiary, division or other device, or any of them, are hereby temporarily restrained from withdrawing, transferring, or encumbering any assets currently held by, for, or on behalf of Defendants or any business entity through which she/they act or which act in active concert or participation with them; including but not limited to those assets currently held in: (1) the

---

[40] *See id., at* *3* ("[E]ntering a TRO favors the public interest because . . . [f]reezing [] cryptocurrency accounts reassures the public that even with transactions conducted in the cryptocurrency space, there is an adequate remedy at law to prevent fraud or theft.").

[41] *See* cases cited in n.36, *supra*.

[42] *Id.*

[43] Rec. Doc. 6.

    Destination Addresses; (2) any account at any other financial institution, bank, trading exchange, or investment firm; and (3) any cryptocurrency wallet or cryptocurrency trading account they maintain or control anywhere other than in the Destination Addresses.

2. Notice was not provided to Defendant "1" or JOHN DOES 1-20 prior to entry of this Order because her/their identities are presently unknown to Plaintiff.

3. Pursuant to Fed. R. Civ. P. 65(c), which requires that security must typically be posted by Plaintiff, the Court has determined that One Hundred Dollars ($100.00) is adequate to pay the costs and damages, if any, sustained by any party found to have been wrongfully enjoined or restrained by this Order. Therefore, pursuant to Fed. R. Civ. P. 65, Plaintiff shall—within ten (10) calendar days of this Order—post a bond in the amount of One Hundred Dollars ($100.00) to secure this Order. In lieu of a bond, Plaintiff may post cash or its equivalent with the Clerk of Court.

4. Upon a showing of good cause by any party-of-interest, the Court may enter a further order amending the amount of Plaintiff's bond requirement as a means of providing a source of funds to which Defendants may be entitled for a wrongful injunction or restraint.

5. This Temporary Restraining Order will expire fourteen (14) days from its entry in accordance with Fed. R. Civ. P. 65(b)(2) unless, for good cause shown, this Order is extended or Defendant "1" or JOHN DOES 1-20 consent that it should be extended for a longer period of time. However, the Court may, upon demonstration of good cause by any party-of-interest, shorten or lift this Order.

6. A hearing to determine whether to convert this temporary restraining order into a preliminary injunction is set for March 8, 2024, at 10:00 A.M., United States District Court, Eastern District of Louisiana, 500 Poydras Street, New Orleans, Louisiana 70130, Courtroom C-227.

**NEW ORLEANS, LOUISIANA**, this  23rd  day of February, 2024, at  12:30  PM.

                                                **NANNETTE JOLIVETTE BROWN**
                                                **CHIEF JUDGE**
                                                **UNITED STATES DISTRICT COURT**