**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF LOUISIANA**

**JEYSEN ZIVAN YOGARATNAM**                **CIVIL ACTION**

**VERSUS**                                                         **NO. 24-393**

**JOHN DOE et al.**                                          **SECTION: "G"(4)**

## ORDER AND REASONS

Before the Court is Plaintiff Jeysen Zivan Yogaratnam's ("Plaintiff") Motion for Final Default Judgment.[1] In the motion, Plaintiff seeks entry of final default judgment against Defendant "1" a/k/a "Darina Dubois" and Defendants John Does 1-20 (collectively, "Defendants"). Defendants have not entered appearances in this matter. Having considered the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion.

## I. Background

According to the Complaint, Defendants deceived Plaintiff into transferring approximately $294,215 worth of cryptocurrency into Defendants' private cryptocurrency wallet addresses (collectively, "Destination Addresses") after Defendant 1 a/k/a "Darina Dubois" fraudulently represented that she was a cryptocurrency investor who would assist Plaintiff in investing his cryptocurrency.[2] Plaintiff allegedly believed that he had downloaded a legitimate and regulated cryptocurrency exchange smartphone application called CTRL-FX, but under the guidance of Defendant 1, Plaintiff instead downloaded an illegitimate application.[3] At the direction of

---

[1] Rec. Doc. 15.

[2] Rec. Doc. 1 at 1, 3–4.

[3] *Id.* at 4.

1

Defendant 1, Plaintiff began transferring cryptocurrency he held in his Coinbase and Kraken accounts to what he believed was the legitimate CTRL-FX exchange.[4] Plaintiff alleges that the application was entirely simulated and served as a vehicle of theft for Defendants, giving them a mechanism to provide Plaintiff with false account statements that masked the fraudulent scheme Defendants were perpetrating.[5] Plaintiff alleges that the "CTRL-FX" exchange to which Plaintiff was sending his cryptocurrency holdings was actually—unbeknownst to Plaintiff—Defendants' own private cryptocurrency wallet addresses.[6]

According to the Complaint, Plaintiff retained CNC Intelligence Inc., a forensic cryptocurrency tracing expert company, which has traced Plaintiff's stolen assets to Destination Addresses believed to be under Defendants' control.[7] Specifically, Plaintiff has identified the following cryptocurrency wallet addresses held primarily at cryptocurrency exchanges Bitkub, Binance, Blofin, and Tokenlon:[8]

---

[4] *Id.* at 5–6.

[5] *Id.* at 6–7.

[6] *Id.* at 4.

[7] *Id.* at 8.

[8] Rec. Doc. 1-4.

| No. | Bitkub Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0x7b7b86bfe06929a7a32aaf9c7bb87c27a816cc7b | (See total below) |
| 2 | 0x3d1d8a1d418220fd53c18744d44c182c46f47468 | (See total below) |
| | | Total: 153,900 USDT |

| No. | Blofin Destination Address | Funds Traced (USDT) |
|---|---|---|
| 1 | 0xc383e037ab6872adae3ec35714b8d8cc46bea867 | (See total below) |
| 2 | 0x0e747eb2ff0f26fb77c3a1ea67ee07fac2dbb783 | (See total below) |
| | | Total: 1,063,609 |

| No. | Binance Destination Address | Funds Traced (BTC) |
|---|---|---|
| 1 | 0x376795c8b53b69a712f1024cf8537f980eb3bcbf | 77,763.16356 USDT |
| | | Total: 77,763.16356 USDT |

| No. | Tokenlon Destination Address | Funds Traced (BTC) |
|---|---|---|
| 1 | 3JA4StsiJwsgMvnxj8JgchmBEZMTH9mUWm | 3.28654 BTC |
| 2 | 3JMjHDTJjKPnrvS7DycPAgYcA6HrHRk8UG | 3.63019 BTC |
| | | Total: 6.91673 BTC |

On February 15, 2024, Plaintiff filed his Complaint, asserting (1) conversion, (2) unjust enrichment, (3) imposition of constructive trust and disgorgement of funds, and (4) conspiracy claims against Defendants.[9] The Court has diversity jurisdiction over this case because the amount in controversy exceeds $75,000 and the suit is between Plaintiff, a citizen of Nevada, and Defendants, citizens of a foreign state.[10] Venue is proper in this District because Defendants are not residents in the United States, and therefore may be sued in any judicial district.[11]

On February 22, 2024, Plaintiff filed a Motion for Temporary Restraining Order seeking to freeze Plaintiff's assets at the specified Destination Addresses held by Defendants.[12] On February 22, 2024, Plaintiff also filed a Motion for Order Authorizing Alternate Service of Process

---

[9] Rec. Doc. 1 at 8–11.

[10] *See* 28 U.S.C. § 1332(a)(2).

[11] *See* 18 U.S.C. § 1965(a), (b), and 28 U.S.C. § 1391(b), (c). Under 28 U.S.C. § 1391(c)(3), a defendant who does not reside in the United States—regardless of citizenship—may be sued in any district.

[12] Rec. Doc. 6.

on Foreign Defendants, seeking to serve Defendants through website posting and Non-Fungible Token ("NFT") electronic transfer.[13] On February 23, 2024, the Court granted Plaintiff's Motion for Temporary Restraining Order and Motion for Alternate Service.[14]

On March 7, 2024, Plaintiff filed a Notice of Filing Proof of Service, attaching the Affidavit of Reagan Charleston Thomas.[15] In the Affidavit, Ms. Thomas states that a copy of the Temporary Restraining Order was added to the service website, located at https://usdccourtservice.com/cv-00393/.[16] Ms. Thomas states Defendants were served with the Summons, Complaint, notice of the Preliminary Injunction Hearing, the Temporary Restraining Order, and a link to the service website via NFT to four Tether (USDT) wallets and three Bitcoin (BTC) wallets on February 26, 2024.[17] Ms. Thomas also states that Plaintiff provided a copy of the Temporary Restraining Order to Bitkub, Blofin, Binance, and Tokenlon exchanges where the seven wallets are held.[18]

On March 8, 2024, the Court held a hearing on whether to convert the Temporary Restraining Order to a Preliminary Injunction.[19] Following the hearing, the Court entered an Order for Preliminary Injunction.[20] On March 22, 2024, Plaintiff filed a Motion for Entry of Default.[21]

---

[13] Rec. Doc. 7.

[14] Rec. Docs. 8, 9.

[15] Rec. Doc. 10.

[16] Rec. Doc. 10-1 at 3.

[17] *Id.* at 2–4.

[18] *Id.* at 3.

[19] Rec. Doc. 11.

[20] Rec. Doc. 12.

[21] Rec. Doc. 13.

On March 25, 2024, the Clerk of Court entered default against Defendants.[22] On April 29, 2024, Plaintiff filed the instant Motion for Default Judgment.[23]

## II. Plaintiff's Arguments

### A.    Plaintiff's Arguments in Support of the Motion

Plaintiff moves the Court to enter default judgment against Defendants on the conversion, unjust enrichment, and imposition of a constructive trust and disgorgement of funds claims.[24] However, Plaintiff is not seeking a judgment on the conspiracy cause of action because Defendants never made an appearance, so Plaintiff could not conduct discovery to support this conspiracy claim.[25] Plaintiff contends that the Court's entry of final default judgment against Defendants as to the three causes of action discussed above is appropriate because the Clerk of Court has entered default against all Defendants.[26] Plaintiff also contends that he has established Defendants' liability for his conversion, unjust enrichment, and imposition of constructive trust and disgorgement of funds claims he has asserted against Defendants.[27]

Plaintiff argues that he is entitled to damages of $619,304.51 because this is the current market value of the cryptocurrency assets.[28] Plaintiff also argues that the entry of a permanent injunction and imposition of a constructive trust is necessary to prevent Defendants' continuing

---

[22] Rec. Doc. 14.

[23] Rec. Doc. 15.

[24] *Id.* at 1.

[25] *Id.*

[26] *Id.* at 4.

[27] *Id.* at 4–6.

[28] *Id.* at 6.

conversion and unjust enrichment.[29]

Plaintiff acknowledges that "the law is undeveloped in the emerging field of blockchain crypto technology," but in other areas of law such as trademark infringement, "federal courts routinely issue the type of injunction requested here."[30] Plaintiff asserts that he has met the standard for obtaining a permanent injunction, as Defendants will continue to transfer Plaintiff's funds to other wallets absent a permanent injunction.[31] Plaintiff also acknowledges that in similar cases, some courts have refused to grant a permanent injunction and instead only granted monetary damages.[32] Nevertheless, "Plaintiff believes a permanent injunction is necessary to prevent Defendants' from stealing more cryptocurrency from other victims and to prevent them from transferring Plaintiff's funds to other wallets causing irreparable injury without any legal remedy."[33]

## II. Legal Standard

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter a default judgment against a party when it fails to plead or otherwise respond to the plaintiff's complaint within the required time period.[34] Before seeking a default judgment, the plaintiff must petition the clerk for an entry of default, which is simply "a notation of the party's default on the clerk's record of the case."[35] After the clerk has entered a default, the plaintiff may move for a default judgment under

---

[29] *Id.*

[30] *Id.* at 7 (collecting cases).

[31] *Id.*

[32] *Id.* at 8 (citing *Bowen v. Li*, No. 23-20399, 2023 WL 4623594, at *7 (S.D. Fla. July 18, 2023); *Bandyppadhyay v. Defendant 1*, No. 22-22907, 2023 WL 2263552, at *7 (S.D. Fla. Feb. 28, 2023)).

[33] *Id.*

[34] Fed. R. Civ. P. 55(b).

[35] *Hillman v. Southern Insulators, LLC*. No. 23-659, 2023 WL 8113621, at *1 (E.D. La. Nov. 22, 2023)

Federal Rule of Civil Procedure 55(b).[36] The Fifth Circuit has laid out a two-part test for determining whether a default judgment should be entered. First, the court determines whether a default judgment is appropriate under the circumstances, considering factors such as "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[37] "Second, the court must assess the merits of a plaintiff's claims and find a viable claim for relief."[38]

On a motion for default judgment, the court accepts the plaintiff's factual allegations in the complaint as true.[39] However, the court does not hold the defaulting defendant "to [have] admit[ed] facts that are not well-pleaded or to [have] admit[ed] conclusions of law."[40] Default judgment should not be entered unless the judgment " is supported by well-pleaded allegations and ha[s] a sufficient basis in the pleadings."[41] "Generally, the entry of default judgment is committed to the discretion of the district judge."[42]

---

(Africk, J.) (internal quotation marks and citations omitted).

[36] *Meyer v. Bayles*, 559 F. App'x. 312, 313 (5th Cir. 2014).

[37] *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998).

[38] *AR Factoring, LLC v. Commonwealth Applied Silica Tech. LLC.*, No. 19-1906, 2020 WL 2128474, at *1 (E.D. La. May 5, 2020) (Guidry, J.).

[39] *Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001).

[40] *Wooten v. McDonald Transit Assocs., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (internal quotation marks and citations omitted).

[41] *Id.* (internal quotation marks and citation omitted).

[42] *Ameser v. Nordstrom Inc.*, 442 F. App'x 967, 969 (5th Cir. 2011) (internal quotation marks and citation omitted).

**IV. Analysis**

Plaintiff seeks an entry of final default judgement against Defendants on the conversion, unjust enrichment, and imposition of constructive trust and disgorgement of funds claims.[43] Plaintiff contends that he has asserted viable claims against Defendants and should be entitled to an award of monetary damages and entry of a permanent injunction.[44]

**A.      *Whether Default Judgment is Appropriate Under the Circumstances***

In determining whether default judgment is appropriate under the circumstances, the Court may consider factors such as "whether material issues of fact are at issue, whether there has been substantial prejudice, whether the grounds for default are clearly established, whether the default was caused by a good faith mistake or excusable neglect, the harshness of a default judgment, and whether the court would think itself obliged to set aside the default on the defendant's motion."[45]

Here, the grounds for default are clearly established, as Defendants have been served by website posting and NFT but have not entered any appearances. Thus, the Clerk of Court entered default against Defendants. In cases similar to this instant case where the plaintiff alleged that the unnamed defendants stole their cryptocurrency assets as part of a global fraud scheme, the defendants, purportedly citizens of China, never made appearances and courts in those cases subsequently entered default judgment against the defendants.[46] Therefore, it is unlikely that Defendants here failed to appear because of a good faith mistake or excusable neglect.

---

[43] Rec. Doc. 15.

[44] *Id.*

[45] *Lindsey*, 161 F.3d at 893.

[46] *Yangjing Lin v. Defendant "1,"* No. 23-5878; Rec. Doc. 42 (E.D. La. Mar. 21, 2024) (Guidry, J.); *Blum v. Defendant 1*, No. 23-24734; Rec. Doc. 19. (N.D. Fla. Feb. 5, 2024); *Ohlin v. Defendant 1*, No.23-8856; Rec. Doc. 18 (N.D. Fla. Dec. 15, 2023).

Accordingly, default judgment is appropriate under these circumstances and the Court turns to address the merits of Plaintiff's claims, including whether relief is available for those claims in determining whether default judgment should be entered.

**B.    *Defendants' Liability as to the Conversion, Unjust Enrichment, and Constructive Trust Claims***

      **1.    Conversion**

In the Court's February 23, 2024 Order and Reasons granting Plaintiff a Temporary Restraining Order, the Court found that Plaintiff has a strong likelihood of success on the merits of his conversion claim under Nevada law, where Plaintiff resides and where the acts giving rise to the theft occurred, as alleged in the Complaint.[47] Under Nevada law, "[t]o prevail on a conversion claim, a plaintiff must prove: (1) the defendant committed a distinct act of dominion wrongfully exerted over the plaintiff's personal property; (2) the act was in denial of, or inconsistent with, the plaintiff's title or rights therein; and (3) the act was in derogation, exclusion, or defiance of the plaintiff's title or rights in the personal property."[48] Plaintiff has produced evidence suggesting that he owned the funds traced to Defendants' Destination Addresses. It appears from the record that Defendants have no right to claim either possession or ownership of the stolen assets, and Defendants' taking of the funds is clearly inconsistent with Plaintiff's rights of ownership. Plaintiff's cryptocurrencies are specific, identifiable property that CNC Intelligence, Inc. has traced to Defendants' Destination Addresses. Therefore, Plaintiff has established Defendants' liability for conversion of Plaintiff's cryptocurrencies.

---

[47] Rec. Doc. 8 at 7–8.

[48] *Amatrone v. State Farm ire & Cas. Co.*, No. 17-1279, 2018 WL 772078, at *5 (D. Nev. Feb. 7, 2018) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1049 (Nev. 2000)).

## 2.        Unjust Enrichment

Under Nevada law, to prevail on an unjust enrichment claim, a party must prove: "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation by the defendant of such benefit; (3) acceptance and retention by the defendant of such benefit." [49] Here, Plaintiff alleges and has provided evidence that Defendants received a benefit when they obtained Plaintiff's cryptocurrency assets, kept it in their private cryptocurrency wallets, and restricted Plaintiff's ability to withdraw or transfer it. Therefore, Plaintiff has shown that Defendants are liable to Plaintiff on this unjust enrichment claim.

## 3.        Constructive Trust and Disgorgement of Funds

Under Nevada law, the imposition of a constructive trust requires three elements: "(1) that a confidential relationship exists between the parties; (2) retention of legal title by the holder thereof against another which would be inequitable; and (3) the existence of such a trust is essential to the effectuation of justice."[50] Further, Nevada law requires a plaintiff to show unjust enrichment before a court imposes a constructive trust. [51] Applying Nevada law, Plaintiff is entitled to a constructive trust and disgorgement of funds in relation to the wrongfully obtained cryptocurrency. As discussed above, Plaintiff has established a viable unjust enrichment claim. Further, Plaintiff's well-plead allegations establish that Defendants developed a relationship with Plaintiff online, purportedly to teach Plaintiff cryptocurrency investment strategies, in order to unlawfully take these cryptocurrency assets from Plaintiff. Therefore, Defendants must disgorge the

---

[49] *Chachas v. City of Ely, Nev.,* 615 F. Supp. 2d 1193, 1208 (D. Nev. 2009) (quoting *Unionamerica Mtg. v. McDonald,* 97 626 P.2d 1272, 1273 (1981)).

[50] *JP Morgan Chase Bank, N.A. v. KB Home,* 632 F. Supp. 2d 1013, 1028 (D. Nev. 2009) (quoting *Waldman v. Maini,* 195 P.3d 850, 857 (Nev. 2008)).

[51] *Waldman,* 195 P.3d at 858.

cryptocurrency assets in which Plaintiff has an equitable interest. With the assistance of a cryptocurrency tracking firm, Plaintiff has identified the cryptocurrencies transferred, its current worth, and the specific destination addresses it was transferred to. Therefore, Plaintiff has shown the merits of his constructive trust and disgorgement of funds claim.

Plaintiff has asserted viable claims of conversion, unjust enrichment, and imposition of constructive trust and disgorgement of funds under Nevada law. The Court thus turns to address which remedies are available for these claims.

### C.    Whether Plaintiff Should be Awarded Damages and Granted a Permanent Injunction

Plaintiff seeks damages for the conversion and unjust enrichment claims.[52] According to Plaintiff's Declaration, Defendants converted 9.0584 Bitcoin and $39,770.36609 USDT from Plaintiff.[53] Plaintiff states that the value of the stolen cryptocurrency at the time of theft was approximately $294,215.[54] Plaintiff further declares that the current market value of Bitcoin is $63,977.54 and the present-day value of his stolen cryptocurrencies is $619,304.51.[55] However, Plaintiff attached a screenshot dated April 26, 2024 showing that the current market value of Bitcoin is $64,656.55.[56] Therefore, based on Bitcoin's market value of $64,656.66 on April 26, 2024 and Plaintiff's Declaration dated April 26, 2024 that he owns 9.0584 Bitcoin and $39,770.36609 USDT, Plaintiff is entitled to a damages award of $625,455.26.[57]

---

[52] Rec. Doc. 1 at 8–9.

[53] Rec. Doc. 15-1 at 2. The Complaint also states that Defendants converted 9.0584 Bitcoin and $39,770.3669. Rec. Doc. 1 at 1.

[54] Rec. Doc. 15-1 at 3.

[55] *Id.*

[56] *Id.* at 5.

[57] ($64,656.55 x 9.0584) + $39,770.36609 = 625,455.25861.

Plaintiff also requests that the Court enter a permanent injunction and impose a constructive trust over the stolen cryptocurrencies.[58]  Permanent injunctive relief is appropriate where a plaintiff demonstrates (1) he has suffered irreparable injury; (2) there is no adequate remedy at law; (3) the balance of hardship favors an equitable remedy; and (4) the public interest would not be disserved by a permanent injunction.[59]

Here, monetary damages are not an adequate remedy at law because absent a permanent injunction, Defendants will continue to transfer Plaintiff's funds to other wallets, causing Plaintiff irreparable harm. To put it another way, Defendants will continue to convert Plaintiff's cryptocurrency assets and be unjustly enriched. Defendants face no hardships from a permanent injunction, as they stole Plaintiff's cryptocurrency assets. Further, the public interest would not be disserved with a permanent injunction. Granting Plaintiff a permanent injunction to halt Defendants' conduct in converting stolen cryptocurrency assets and unjustly enriching themselves is a step towards deterring Defendants from engaging in further fraudulent conduct in the cryptocurrency blockchain space.

## V. Conclusion

Following the Court's prior Orders granting Plaintiff a Temporary Restraining Order and a Preliminary Injunction, the Court also finds it appropriate to enter final default judgment against Defendants, including entry of a Permanent Injunction and an award of monetary damages against Defendants. Defendants have been served with the Summons, the Complaint, and the TRO Orders in this matter, but have not made any appearances in this matter. Plaintiff's well-pleaded Complaint establishes that Defendants are liable to Plaintiff for conversion, unjust enrichment, and

---

[58] Rec. Doc. 15 at 6.

[59] *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006).

imposition of a constructive trust and disgorgement of funds. Plaintiff has also shown the amount of damages in this matter and why a permanent injunction is necessary.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Final Default Judgment[60] is **GRANTED**.

**NEW ORLEANS, LOUISIANA**, this 8th day of May, 2024.

**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**

---

[60] Rec. Doc. 15.