## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

**JEYSEN ZIVAN YOGARATNAM**                    **CIVIL ACTION**

**VERSUS**                                                        **NO. 24-393**

**JOHN DOE et al.**                                            **SECTION: "G"(4)**

### ORDER AND REASONS

Before the Court is Plaintiff Jeysen Zivan Yogaratnam's ("Plaintiff") Motion to Review Magistrate Judge's Order Pursuant to Local Rule 72.2.[1] In the motion, Plaintiff seeks review of the Magistrate Judge's October 29, 2024 Order[2] denying him expedited discovery and third-party subpoenas. Defendants have not entered appearances in this matter. Having considered the motion, the memorandum in support, the record, and the applicable law, the Court grants the motion.

### I. Background

According to the Amended Complaint, Defendants deceived Plaintiff into transferring approximately $294,215 worth of cryptocurrency into Defendants' private cryptocurrency wallet addresses (collectively, "Destination Addresses") after Defendant 1 a/k/a "Darina Dubois" fraudulently represented that she was a cryptocurrency investor who would assist Plaintiff in investing his cryptocurrency.[3] Plaintiff allegedly believed he had downloaded a legitimate and regulated cryptocurrency exchange smartphone application called CTRL-FX, but under the

---

[1] Rec. Doc. 25.

[2] Rec. Doc. 24.

[3] Rec. Doc. 20 at 1–4.

guidance of Defendant 1, Plaintiff instead downloaded an illegitimate application.[4] At the direction of Defendant 1, Plaintiff began transferring cryptocurrency he held in his Coinbase and Kraken accounts to what he believed was the legitimate CTRL-FX exchange.[5] Plaintiff alleges that the application was entirely simulated and served as a vehicle of theft for Defendants, giving them a mechanism to provide Plaintiff with false account statements that masked the fraudulent scheme Defendants were perpetrating.[6] Plaintiff alleges the "CTRL-FX" exchange to which Plaintiff was sending his cryptocurrency holdings was actually—unbeknownst to Plaintiff—Defendants' own private cryptocurrency wallet addresses.[7]

According to the Complaint, Plaintiff retained CNC Intelligence Inc., a forensic cryptocurrency tracing expert company, which has traced Plaintiff's stolen assets to Destination Addresses believed to be under Defendants' control.[8] Specifically, Plaintiff has identified the following cryptocurrency wallet addresses held primarily at cryptocurrency exchanges Bitkub, Binance, Blofin, and Tokenlon.[9]

---

[4] *Id.* at 5–6.

[5] *Id.* at 7.

[6] *Id.*

[7] *Id.* at 3.

[8] *Id.* at 9.

[9] Rec. Doc. 1-4.

| No. | Bitkub Destination Address | Total |
|-----|---------------------------|-------|
| 1 | 0x7b7b86bfe06929a7a32aaf9c7bb87c27a816cc7b | 153,900 USDT |

| No. | Blofin Destination Address | Total |
|-----|---------------------------|-------|
| 1 | 0xc383e037ab6872adae3ec35714b8d8cc46bea867 | 1,063,609 USDT |

| No. | Binance Destination Address | Total |
|-----|----------------------------|-------|
| 1 | 0x376795c8b53b69a712f1024cf8537f980eb3bcbf | 77,763.16356 USDT |

| No. | Tokenlon Destination Address | Total |
|-----|------------------------------|-------|
| 1 | 3JA4StsiJwsgMvnxj8JgchmBEZMTH9mUWm | 3.28654 BTC |

On February 15, 2024, Plaintiff filed a Complaint, asserting (1) conversion, (2) unjust enrichment, (3) imposition of constructive trust and disgorgement of funds, and (4) conspiracy claims against Defendants.[10] The Court has diversity jurisdiction over this case because the amount in controversy exceeds $75,000 and the suit is between Plaintiff, a citizen of Nevada, and Defendants, citizens of a foreign state.[11] Venue is proper in this District because Defendants are not residents in the United States, and therefore may be sued in any judicial district.[12]

On February 22, 2024, Plaintiff filed a Motion for Temporary Restraining Order seeking to freeze Plaintiff's assets at the specified Destination Addresses held by Defendants.[13] On February 22, 2024, Plaintiff also filed a Motion for Order Authorizing Alternate Service of Process on Foreign Defendants, seeking to serve Defendants through website posting and Non-Fungible Token ("NFT") electronic transfer.[14] On February 23, 2024, the Court granted Plaintiff's Motion

---

[10] Rec. Doc. 1 at 8–11.

[11] *See* 28 U.S.C. § 1332(a)(2).

[12] *See* 18 U.S.C. § 1965(a), (b), and 28 U.S.C. § 1391(b), (c). Under 28 U.S.C. § 1391(c)(3), a defendant who does not reside in the United States—regardless of citizenship—may be sued in any district.

[13] Rec. Doc. 6.

[14] Rec. Doc. 7.

for Temporary Restraining Order and Motion for Alternate Service.[15]

On March 7, 2024, Plaintiff filed a Notice of Filing Proof of Service, attaching the Affidavit of Reagan Charleston Thomas ("Ms. Thomas").[16] In the Affidavit, Ms. Thomas states that a copy of the Temporary Restraining Order was added to the service website, located at https://usdccourtservice.com/cv-00393/.[17] Ms. Thomas states Defendants were served with the Summons, Complaint, notice of the Preliminary Injunction Hearing, the Temporary Restraining Order, and a link to the service website via NFT to four Tether (USDT) wallets and three Bitcoin (BTC) wallets on February 26, 2024.[18] Ms. Thomas also states that Plaintiff provided a copy of the Temporary Restraining Order to Bitkub, Blofin, Binance, and Tokenlon exchanges where the seven wallets are held.[19]

On March 8, 2024, the Court held a hearing on whether to convert the Temporary Restraining Order to a Preliminary Injunction.[20] Following the hearing, the Court entered an Order for Preliminary Injunction.[21] On March 22, 2024, Plaintiff filed a Motion for Entry of Default.[22] On March 25, 2024, the Clerk of Court entered default against Defendants.[23]

On May 8, 2024, this Court issued a Final Default Judgment and Permanent Injunction in

---

[15] Rec. Docs. 8, 9.

[16] Rec. Doc. 10.

[17] Rec. Doc. 10-1 at 3.

[18] *Id.* at 2–4.

[19] *Id.* at 3.

[20] Rec. Doc. 11.

[21] Rec. Doc. 12.

[22] Rec. Doc. 13.

[23] Rec. Doc. 14.

Plaintiff's favor and against Defendant "1" a/k/a "Darina Dubois" and Defendants John Does 1-20 (collectively, "Defendants").[24] Defendants were served with the Summons, the Complaint, and the TRO Orders, but did not make any appearances in this matter. The Court found that the well-pleaded Complaint established that Defendants are liable to Plaintiff for conversion, unjust enrichment, and imposition of a constructive trust and disgorgement of funds related to Defendants' theft of Plaintiff's cryptocurrency.[25] Plaintiff demonstrated that he was entitled to damages in the amount of $625,455.26.[26]  The Court also found that Plaintiff was entitled to permanent injunctive relief and imposition of a constructive trust over the stolen cryptocurrencies.[27]  The Court permanently enjoined Defendants from maintaining, using, operating, or effecting any electronic transactions on Defendants' wallets where Plaintiff's cryptocurrency had been traced.[28] The Court found that monetary damages were not an adequate remedy at law because absent a permanent injunction, Defendants would continue to transfer Plaintiff's funds to other wallets, causing Plaintiff irreparable harm.[29]

On August 7, 2024, Plaintiff moved the Court to set aside the May 8, 2024 judgment and reopen the case.[30] Plaintiff cited new evidence impacting Plaintiff's ability to collect on the judgment and shedding new light upon the true identities of Defendants.[31] Plaintiff was informed

---

[24] Rec. Doc. 17.

[25] Rec. Doc. 16.

[26] *Id.* at 11.

[27] *Id.* at 12.

[28] Rec. Doc. 17 at 2.

[29] Rec. Doc. 16 at 12.

[30] Rec. Doc. 18.

[31] *Id.*

on Tuesday, August 6, 2024, by his cryptocurrency tracing experts, that a large amount of funds was transferred out of the identified wallet located on the Tokenlon exchange, in violation of the May 8, 2024 judgment.[32] Additionally, Plaintiff's experts informed Plaintiff that the subject wallet located on the Tokenlon exchange has been identified in multiple cryptocurrency money laundering investigations and suits.[33] As such, Plaintiff believed that Defendants are cohorts in a largescale money laundering scam.[34]

On August 21, 2024, the Court granted the motion and reopened the case pursuant to Federal Rule of Civil Procedure 60(b)(2) because Plaintiff demonstrated the judgment should be set aside based on newly discovered evidence that, with reasonable diligence, could not have been discovered within 29 days after entry of the judgment.[35] On September 3, 2024, Plaintiff filed an Amended Complaint asserting (1) RICO, (2) conversion, (3) unjust enrichment, (4) imposition of constructive trust and disgorgement of funds, and (5) conspiracy claims against Defendants.[36]

On October 22, 2024, Plaintiff filed an Ex-Parte Motion for Non-Party Discovery and Leave to Serve Third-Party Subpoenas.[37] The motion was automatically referred to the assigned Magistrate Judge pursuant to Local Rule 72.1. The Magistrate Judge denied the motion on October 29, 2024.[38] On November 8, 2024, Plaintiff filed the instant Motion to Review the Magistrate

---

[32] *Id.*

[33] *Id.*

[34] *Id.*

[35] Rec. Doc. 19.

[36] Rec. Doc. 20.

[37] Rec. Doc. 23.

[38] Rec. Doc. 24.

Judge's Order Pursuant to Local Rule 72.2.[39]

## II. Plaintiff's Arguments

Plaintiff moves the Court to reverse the Magistrate Judge's Order[40] denying him the ability to conduct expedited discovery and serve third-party subpoenas.[41] Plaintiff asserts the analysis applied in the Magistrate Judge's Order "displays a fundamental misunderstanding of cryptocurrency and blockchain technology, the facts of the case, and Plaintiff's forensic expert's findings such that ruling based upon this fundamental misunderstanding . . . is clearly erroneous."[42] Plaintiff begins by listing eight "misinterpretation[s] and mischaracterization[s]" of blockchain and cryptocurrency technology made by the Magistrate Judge.[43] Plaintiff argues as follows:

1. The Magistrate Judge's Order misunderstands that cryptocurrency is an asset traded on a market, and like other assets, fluctuates in value.[44] The value of the loss is the current market value of the Bitcoin and Tether that was stolen from Plaintiff, which is detailed in Plaintiff's expert's notes.[45] Thus, the Magistrate Judge was mistaken when claiming the report does not provide an explanation of how the loss was calculated.[46]
2. The Magistrate Judge's Order misunderstands the "traceable nature" of cryptocurrency transactions.[47]
3. The Magistrate Judge's Order misunderstands that cryptocurrency exchanges "require that users register information" and provide identification in compliance with regulations.[48]

---

[39] Rec. Doc. 25.

[40] Rec. Doc. 24.

[41] Rec. Doc. 24.

[42] *Id*. at 7–8.

[43] *Id.* at 8.

[44] *Id.*

[45] *Id.*

[46] *Id.*

[47] *Id.* at 9.

[48] *Id.*

4. The Magistrate Judge's Order misunderstands that Plaintiff is not seeking discovery as to "hot wallets," which would not provide identifying information.[49]

5. The Magistrate Judge's Order does not appreciate that cryptocurrency tracing is the "most obvious step to identify Defendants."[50]

6. The Magistrate Judge's Order fails to recognize the expert report identifies the wallet addresses associated with the accounts as possessing information necessary to identify the Defendants, and that that information has not been turned over by the exchanges.[51]

7. The Magistrate Judge's Order misunderstands that Plaintiff's transactions began with a transaction from "genuine accounts on a legitimate exchange," which allowed Plaintiff to track the movement of his funds from his account on a genuine exchange, to the scam exchange, back to Defendants' wallets on a genuine exchange.[52]

8. The Magistrate Judge's Order incorrectly claims the expert's report states the deposit wallets the funds were traced to are "likely" the end points for Plaintiff's funds. Instead, the expert report states the funds are "likely" to be moved from those wallets.[53]

In addition, Plaintiff claims the Magistrate Judge's Order failed to conduct a proper good cause analysis.[54] First, Plaintiff claims the Magistrate Judge's Order failed to consider the entire record.[55] Second, Plaintiff avers the Order overlooks the fact Plaintiff's Temporary Restraining Order and Preliminary Injunction were granted, demonstrating likely success on the merits.[56] Plaintiff argues this underscores the fact there is good cause to allow expedited discovery.[57] Third,

---

[49] *Id.* at 10.

[50] *Id.*

[51] *Id.*

[52] *Id.* at 11.

[53] *Id.*

[54] *Id.* at 12.

[55] *Id.*

[56] *Id.* at 13.

[57] *Id.*

Plaintiff argues the Order misapplies non-dispositive factors and fails to consider relevant factors in its good cause analysis.[58] Namely, Plaintiff argues he identified Defendants with certainty,[59] took efforts to locate the Defendants through tracing,[60] would survive a motion to dismiss,[61] and that expedited discovery is likely to lead to identifying information of Defendants.[62] Fourth, Plaintiff states the Magistrate Judge's Order disregards the severity of the "pig butchering scam epidemic."[63] Plaintiff argues the interests of justice require expedited discovery in the face of the widespread impacts of these sophisticated scams.[64]

## II. Legal Standard

### A.     *Standard of Review of a Magistrate Judge's Ruling*

A district judge "may designate a magistrate judge to hear and determine any pretrial matter pending before the [district] court."[65] A party may file objections to a Magistrate Judge's Order "within 14 days after being served with a copy."[66] When objections are raised to non-dispositive pretrial matters, a district court must consider timely objections and "modify or set aside any part of the order that is clearly erroneous or contrary to law."[67] Under this highly deferential standard,

---

[58] *Id.*

[59] *Id.*

[60] *Id.* at 15.

[61] *Id.* at 16.

[62] *Id.*

[63] *Id.* at 18.

[64] *Id.*

[65] 28 U.S.C. § 636(b)(1)(A).

[66] Fed. R. Civ. P. 72(a).

[67] *Id.*

the court will reverse only when "on the entire evidence [it] is left with a definite and firm conviction that a mistake has been committed."[68]

### B.    *Expedited Discovery*

Generally, discovery is conducted after a Federal Rule 26(f) conference. However, Rule 26(d) allows expedited discovery prior to a Rule 26(f) conference when "authorized by these rules, by stipulation, or by court order." Rule 26(d) does not offer any guidelines on when courts should grant a request for expedited discovery. Courts generally use "either a preliminary-injunction-style analysis or the good cause standard to determine whether a part is entitled to conduct expedited discovery."[69] The Fifth Circuit has not explicitly adopted either of these standards to determine whether expedited discovery is proper, but many district courts within the Fifth Circuit have chosen to apply the "good cause" standard.[70]

"Good cause may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party."[71] In conducting this analysis, courts must examine the discovery request based on the entirety of the record and the reasonableness of the request considering the circumstances.[72] Additional factors courts consider include "'the breadth of the discovery requests, the purpose for requesting expedited discovery, the burden on the defendants to comply with the requests and how far in advance of the typical

---

[68] *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948).

[69] *Stockade Cos., LLC v. Kelly Restaurant Grp., LLC*, 2017 WL 2635285, at *2 (W.D. Tex., June 19, 2017) (internal citations and quotations omitted).

[70] *ELargo Holdings, LLC v. Doe–68.105.146.38*, 318 F.R.D. 58, 61 (M.D. La., Dec. 1, 2016) (collecting cases).

[71] *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

[72] *BKGTH Prods., LLC v. Does 1-20*, 2013 WL 5507297, at *5 (E.D. La., Sept. 13, 2013) (quoting *St. Louis Grp., Inc. v. Metals and Additives Corp., Inc.*, 275 F.R.D. 236, 239—40 (S.D. Tex., Apr. 26, 2011)).

discovery process the request was made.'"[73]

When a plaintiff seeks to use expedited discovery to identify a Doe defendant, courts generally consider if that plaintiff has identified "the missing party with sufficient specificity, the previous steps taken to locate the elusive defendant, and whether the plaintiff's claims would withstand a motion to dismiss."[74] District courts in the Ninth Circuit have additionally given weight to whether "discovery is likely to lead to identifying information that will permit service of process."[75]

## IV. Analysis

Plaintiff seeks review of the Magistrate Judge's October 29, 2024 Order denying his Motion for Expedited Discovery and Leave to Serve Third-Party Subpoenas. Specifically, Plaintiff seeks to serve subpoenas on Bitkub, Binance, Blofin, and Tokenlon for the following information related to the wallet addresses associated with the alleged theft:

1.    Account holder's name, address, phone number, and email address.
2.    Know Your Customer (KYC) and Anti-Money Laundering (AML) information.
3.    Account balances and transaction history to prevent the further dissipation of Plaintiff's stolen assets.
4.    Records of transfers to/from the relevant wallet addresses to further prevent the dissipation of Plaintiff's stolen assets.

In cases involving analogous claims of cryptocurrency theft to this case, "courts have allowed plaintiffs to conduct expedited discovery to ascertain identifying information . . . with

---

[73] *BKGTH Prods.*, WL 5507297 at *4 (quoting *St. Louis*, 275 F.R.D. at 240).

[74] *Mary Kay v. Beyou-Cosmetics storefront of www.ebay.com*, No. 21-1074, 2021 WL 2315097, at *1 (N.D. Tex. June 7, 2021) (quoting *Combat Zone Corp. v. Does*, 12-2750, 2012 WL 12898022, at *1—2 (S.D. Tex., Sept. 17, 2012)).

[75] *ZG TOP Tech. Co. Ltd. v. Doe*, 2019 WL 917418 (W.D. Wash., Feb. 25, 2019) (citing *Bodyguard Prods., Inc. v. Doe 1*, 2018 WL 1470873, at *1 (W.D. Wash., Mar. 26, 2018)).

respect to the John Doe defendants . . ."[76] The Magistrate Judge's Order in this case bucks this trend, denying Plaintiff the ability to conduct expedited discovery and serve third-party sobpeonas in order to attempt to identify the Doe Defendants involved.[77] Specifically, the Magistrate's Order claims Plaintiff has not met his burden in identifying Doe Defendants 1-4, has not taken measures to locate Doe Defendants, has not demonstrated his claims would withstand a motion to dismiss, and has not established the subpoenas would produce identifying information. These conclusions were factually erroneous. For the reasons set forth below, Plaintiff has demonstrated that expedited discovery is warranted.

First, to obtain expedited discovery regarding the identity of an unknown Doe defendant, the plaintiff must identify the Doe defendant with "sufficient specificity [so] that the Court can determine that the defendant is a real person who can be sued in federal court. . . ."[78] Here, Plaintiff has demonstrably met this burden. Plaintiff has explained that someone must own and operate the wallets his funds were traced to,[79] meaning Doe defendants are real people who can be sued by a federal court.

Second, Plaintiff demonstrated clear steps taken to locate the Doe Defendants. Plaintiff hired a forensic analyst to track where his assets went and the identities of the fraudsters.[80] The analyst successfully traced Plaintiff's funds to wallets contained within four entities: Blofin,

---

[76] *Chow v. Defendant "1"*, No. 2:24-cv-00480-DJP-DPC, at *5 (E.D. La. Nov. 4, 2024) (collecting cases).

[77] *See* Rec. Doc. 24.

[78] *ZG TOP Technology Co. Ltd. v. Doe*, 2019 WL 917418, at *2 (W.D. Wash., 2019).

[79] *See* Rec. Doc 25 at 2.

[80] *See* Rec. Doc. 20-1.

Bitkub, Tokenlon, and Binance.[81] The Magistrate Judge's Order takes issue with the fact Plaintiff's expert prepared letters to send to the exchanges, but there is no evidence Plaintiff sent letters to the exchanges requesting that they voluntarily release Defendants' information.[82] The Magistrate Judge appears to have created this requirement from whole cloth. The expert report states the letters were prepared for Plaintiff to submit to the exchanges, who are expected by the expert to provide the names and location of Defendants "upon request from law enforcement or a court order."[83] Plaintiff's expert has taken clear steps to identify Defendants by tracing the funds through the blockchain. Thus, according to Plaintiff's expert, Plaintiff has done what is possible up to this point to locate Defendants. To successfully obtain Doe Defendants identifying information from the exchanges, it is apparent this Court's subpoena power is essential.

Third, Plaintiff previously demonstrated his ability to survive a motion to dismiss. Plaintiff's Motion for a Temporary Retraining Order, request for Preliminary Injunction, and Motion for Default Judgment were all granted by this Court.[84] In those motions, Plaintiff demonstrated a substantial likelihood of success on the merits.[85] Therefore, Plaintiff has clearly shown the ability to survive a motion to dismiss.

Fourth, Plaintiff has shown the subpoenas would likely lead to identifying information of the Doe Defendants. According to Plaintiff's expert, the exchanges "should provide the names and locations of the suspects in this case" in response to a "request from law enforcement or a court

---

[81] *Id.* at 10.

[82] Rec. Doc. 24 at 8.

[83] Rec. Doc. 20-1 at 8.

[84] Rec. Doc. 8; Rec. Doc. 12; Rec. Doc. 17.

[85] Rec. Doc. 8; Rec. Doc. 12; Rec. Doc. 17.

order."[86] As Plaintiff's expert report explains, "Know Your Customer" "processes are . . . employed by companies of all sizes for the purpose of ensuring their proposed customers, agents, consultants, or distributors are anti-bribery compliant, and are who they claim to be."[87] As such, if these exchanges abide by Know Your Customer guidelines, they should be able to provide at least some relevant information regarding the identities of the Doe Defendants considering the Doe Defendants should have provided this information to the exchanges when they created their digital wallets. Therefore, subpoenaing this information will likely lead to identifying information of the currently unknown Defendants.

Fifth, the Court considers the overarching principle that good cause to grant expedited discovery "may be found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the responding party" and where the request is reasonable.[88] In this case, reasonableness and the administration of justice requires granting expedited discovery and issuing third-party subpoenas for Know Your Customer information from the exchanges Plaintiff listed. Without a court order for this information, Plaintiff possesses no possible way to begin to identify the individuals involved in the fraudulent scheme he was subject to. It would be patently unreasonable and a miscarriage of justice to prevent Plaintiff from conducting basic expedited discovery to learn the identities of the defendants so that he may attempt to recover the allegedly stolen cryptocurrency. Blofin, Bitkub, Tokenlon, and Binance will face no prejudice in responding to the third-party subpoena, as this basic identifying information is easily accessible to them. Collecting the information and providing it only asks the entities to

---

[86] Rec. Doc. 20-1 at 8.

[87] *Id.* at 39.

[88] *Semitool, Inc. v. Tokyo Electron Am., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002).

electronically access and summarize the information associated with the wallets of the alleged fraudsters.

Finally, other courts have noted that these accounts could have been opened fraudulently, and there is a potential that the subpoenaed information could create "false positive" identifications. Potentially innocent persons have the right to keep their information private, while Plaintiff has the right to identify the persons responsible for the alleged fraud. To balance these competing concerns, courts have implemented protocols to safeguard the privacy rights of potentially innocent third parties.[89] This Court will implement similar protocols to reduce the potential prejudice to any potentially innocent third parties, including an order specifying that Plaintiff may only use the information disclosed in response to the subpoena for the purpose of protecting and enforcing his rights as set forth in the Amended Complaint.[90]

---

[89] *Chow*, No. 2:24-cv-00480-DJP-DPC, at *6 (citing *Tyson v. Coinbase Glob., Inc.*, No. 23-22066, 2024 WL 69929, at *3 (D.N.J. Jan. 4, 2024)).

[90] Other courts have limited the discoverable information to only the name, address, telephone number, and email address of the account holders. *See Chow*, No. 2:24-cv-00480-DJP-DPC, at *7; *Tyson*, 2024 WL 69929, at *4. In *Tyson*, the Court noted that discovery should be narrowly tailored to the purpose of serving process on the defendants. *Id.* Although injunctive relief was mentioned in the complaint, the plaintiff had not filed a motion for a temporary restraining order. *Id.* In this case, the Court has already granted a temporary restraining order, preliminary injunction, and permanent injunction. Therefore, discovery is needed not only for service of process but also for the purpose of enforcing the orders of this Court. The discovery requested is narrowly tailored to those purposes.

## **V. Conclusion**

Plaintiff has met his burden in identifying Doe Defendants, shown steps to identify those Doe Defendants, shown he would withstand a motion to dismiss, and has established the subpoenas would likely produce identifying information of the unknown Defendants. Plaintiff has also demonstrated that the administration of justice requires expedited discovery and serving subpoenas on the entities identified. Therefore, Plaintiff has satisfied his burden of showing good cause exists to conduct expedited discovery. Accordingly, the Magistrate Judge's Order denying him expedited discovery and leave to serve third-party subpoenas was clearly erroneous.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Review Magistrate Judge's Order Pursuant to Local Rule 72.2[91] is **GRANTED**.

**IT IS FURTHER ORDERED** that the Magistrate Judge's October 29, 2024 Order[92] is **VACATED.** Plaintiff is authorized to serve third-party subpoenas on Bitkub, Binance, Blofin, and Tokenlon to obtain the following information related to the wallet addresses associated with the alleged theft:

    a.    Account holder's name, address, phone number, and email address.

    b.    Know Your Customer (KYC) and Anti-Money Laundering (AML) information.

    c.    Account balances and transaction history.

    d.    Records of transfers to/from the relevant wallet addresses.

**IT IS FURTHER ORDERED** that Plaintiff shall attach a copy of this Order to the subpoena. Bitkub, Binance, Blofin, and Tokenlon shall have thirty days from the service of the

---

[91] Rec. Doc. 25.

[92] Rec. Doc. 24.

subpoena to object to or move to quash the subpoena.

Bitkub, Binance, Blofin, and Tokenlon must give notice to the customer(s) to afford them an opportunity to challenge the subpoena. The customer(s) shall likewise have thirty days from service of the subpoena to object to or move to quash the subpoena.

Plaintiff may only use the information disclosed in response to a Rule 45 subpoena for the purpose of protecting and enforcing her rights as set forth in the operative complaint in this matter.

Plaintiff shall forward copies of the responsive information to any Defendant who enters an appearance in this case.

**NEW ORLEANS, LOUISIANA**, this <u>19th</u> day of November, 2024.

_____
**NANNETTE JOLIVETTE BROWN**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**